number 242025 Good morning, excuse me. Good morning. Kurt Mayer for Mr. Valdez. As we talked about in our 28-J letter, we believe that Crosby controls the outcome here. There, like here, the district court didn't adequately and thoughtfully consider, nor properly weigh and carefully discuss specific 3553A factors in giving an upward, a significant upward variance. Specifically, what we're talking about here is that the court didn't adequately address the unwarranted disparities its sentence created, nor did it talk meaningfully about the available sentences under the guidelines. And really, we in Crosby, and we in the government in Crosby, are not really at opposing sides. What we're saying is, we, when there is an upward variance, a sizable upward variance, which this Court said in Crosby, excuse me, requires a significant justification, we're asking that the court show that it's meaningfully engaged with these particular sentences. Can I just ask you on your Crosby argument? Because that, Crosby concerned failure to consider general deterrence. Is that correct? Yes, Your Honor. But you're not, are you arguing that the court here failed to consider general deterrence? Or is it something else you're arguing based on Crosby? Your Honor, my focus is specifically on the court's failure to discuss adequately and meaningfully the unwarranted disparity its sentence created. So you're not talking about general deterrence, like, so what does Crosby do for you, Dan, the cases you already have about discussing the 3553A factors, what does it add? I think what Crosby does is it synthesizes all the court's earlier cases, like Lente, Walker. But does it say anything new? It does to the extent that it actually pinpoints that the court needs to do more than just mention or say it's evaluated the specific factors. We've had other cases where that apparently was enough. But in Crosby, the court said because of the variance that was given there, that what the court said, and the court did say in Crosby, I've considered these factors, I've evaluated them, and here's why downward variance is warranted under those particular factors. And so that's what Crosby does here, is it identifies that there has to be some type of robust engagement with the factors when the court is going to vary so substantially like it did in Crosby, and so substantially like it did here. And so another point I'd make is that Crosby also talked about, in regards to unwarranted disparities, specifically about the fact that the district court there didn't identify any comparative data or any other cases in which a variance was given for a similar defendant under similar circumstances. And that's also something that the court in Walker said too, and we have the same thing here, is that there is no comparative data given by the district court. There is no other case that the court identifies where under these circumstances, the person was given such a significant upward variance. And Mr. Baker, you make an excellent point about, I mean, you actually went into the website that the probation office had identified. My question, and nobody within this criminal history category had gotten over a five-month sentence. My question on that specific point, as excellent as it is, I don't know that that's in the record. If you were to go into, it's sort of like, if you go into that website, you'll find that data, but that was not in the probation office report. The average of four months, that was. So I think that we can consider that, but not the fact that nobody in this criminal history category had received more than a five-month. Am I wrong? You're not wrong, Your Honor. That is correct. And as the court pointed out in Walker, the court, with that kind of information, then the court is on notice that when you have an average of four months for 100% of the people in there, and that was in the record, when you have an average of four-month sentence, the court's on notice that a sentence above that or above the range, applicable range, is going to create an unwarranted disparity. And there needs to be a discussion about why that's not happening with a sentence of 24 months. So is it your position that the district court has to say, I'm going to create a disparity in sentencing here, and I'm going to make a very careful record that it's not deemed unwarranted by the Tenth Circuit, and then talk about a bunch of reasons why, or can we just look at the things that the district court did say and say, you know, it wasn't wrong for her to consider these things, and very upward, even if it did create a disparity? Your Honor, what I'm saying, what we're saying, I guess a quick answer to your question is, everything that you just said should be considered. But here's the problem with this particular case, is that what the court identified as its basis for rearing upward, the seriousness of the offense, the fact that, in its view, he keeps committing crimes at the age of 44, those are specific factors that are already addressed by the sentencing guidelines. What I'm saying that the court has to do is the court has to distinguish the person for them from the mind-run case that is presented to the court, like it was in this case. There was nothing exceptional about the way the offense was committed here. The guideline, the court, what the court's considering, the sentences available under the guidelines. What it's considering is the offense level here, which was calculated offense level eight. That means that there were no enhancements that applied to Mr. Valdez. Nothing that he did in this case was uncommon or out of the ordinary. He was simply ferrying two undocumented immigrants up the road in southern New Mexico. Everything he did after that was unremarkable. He pulled over when he was supposed to, he cooperated with the border patrol agent, and he confessed. What I'm saying then is that the court, when it gives such an upward variance like it did here, is it has to distinguish what makes that different about anybody else on offense level eight. And the same would go with the criminal history. What's so remarkable about his criminal history that category two is not the correct or the appropriate criminal history category for him to be in? So the long answer to your question, Your Honor, is it has to be a robust record. There has to be something that the court identifies specifically about this particular offense, these particular crimes, past crimes, that distinguish him from the mine run case. Let me ask you about that. Can I probe that a little bit? On the criminal history, irrespective of the judge's explanation, because we are on substantive reasonableness, on the DUI and the DWI. So let's say the prior crime was, I'm going to take a horrendous crime, mass shooting, you know, obviously nobody would, with common sense, would question whether you can consider the gravity of that prior crime, even though we're not punishing the defendant for that crime today, that that criminal history would be an exacerbating factor that might justify an upward variance. Do you agree with that? I'm guessing you would. What you're asking me, Your Honor, is a prior conviction for that or the current offense? Well, I'm assuming that most people would agree that if there was proof in criminal history, let's just say an adjudication of guilt for a mass shooting in the past. My real question is, I might or might not regard a past DUI, particularly a DUI or DWI in the last two years, as terrible, as equivalent to a mass shooting. Another district judge might do that. And this is, and so since we are on the use of discretion, is it, does it, although an incredibly harsh sentence, does it take it without, beyond the realm of reason that Judge Strickland had arguably or could have reasonably viewed the past DUI and the past DWI, particularly in his recent past, as so extraordinary as to justify the remarkable upward variance that she imposed? Why would that be unreasonable? It's unreasonable, Your Honor, because it doesn't distinguish him from anybody else who has a DUI. Anybody who's in criminal history category two is going to have two or three points. How those points were assessed could be three misdemeanors, maybe even in a tighter period of time than here, which was a span of seven years. The state legislature of Nebraska and South Dakota decided that DUIs in those states are misdemeanors. Could a judge reasonably disagree with the legislative punishment and think that the statutory punishment is unduly light for DWI and DUI? But that begs the question, then, on what basis? Because the court has no factual basis to decide, well, what he did here in this DUI, he got lenient punishment for. The court that was able to assess that, the Nebraska court, gave him seven days in confinement for that. And that's another problem here, is that the court's comment that these were lenient sentences has no basis in fact. All the courts, the Colorado court, the Nebraska court, the South Dakota court, they had the facts of those particular cases in front of them, and they assessed this is the appropriate punishment for this particular person. Now, I laid out in my opening brief in the Colorado statute about probation being given, the factors that the court has to consider when it gives probation. This is not some thoughtless exercise by the state court there to give Valdez his 18 months probation. It looks at specific factors, including whether the person caused injury to another person. And that speaks to the fact that that didn't happen here. There are certain inferences that can be made. And that's the problem with when a court, just without any basis or without any reason, and to go back to your question, yes, it's unreasonable, comes up with a sentence like this. I agree if there is a prior that talks about a mass shooting and gives details about all that, and maybe the person gets a year's sentence. Okay, that's different, but that's not this case here. She quizzed him about those prior offenses. And I think it's fair to say that the district court thought that his answers were either minimizing his conduct or being, I don't want to say untruthful, but certainly not being fully accountable for what he did. Is that fair? I don't think it is, your honor, with all due respect. No, no, I'm not asking if he did it. Do you have the impression that she thought that from his answers? I have no idea what she thought about it. I mean, she commented on the record, didn't she, that- She said that she was troubled by him, but she didn't say why she was troubled by him. He did not minimize his conduct. She asked him what happened, and he explained. He said that he'd been working 16 to 18 hours, seven days a week. They met their quota working on solar windmills. The boss took them out. They had dinner and drinks, and a bunch of them got caught with DUIs. I don't see how that's minimizing what he did. And the same thing, too, with the other one. He just said, I served seven days for that. Regarding the attempted reckless assault, he explained that he went to the hospital with his wife. She was checked out. She didn't want to pursue charges, but the hospital did. I don't see how that's minimizing. Plus, he was sentenced. Well, I mean, you want to take, like, the hospital incident and say, well, it was nothing. They went to the hospital. She didn't want to press charges, so they went home, you know? And, you know, the district court could look at that and say, hey, this was serious. But this isn't what you say. I view this, and I think, in my judgment, that this is serious, what he did. He assaulted his wife to the extent that she had to go to the hospital. Your Honor. I mean, what I'm concerned about is your argument, you wanting to strip away her discretion. I'm not trying to strip away her discretion. What I am saying, though, is if you're going to vary upward, and I think this is where Crosby helps us. If you're going to vary upward to such a degree that the court did here, there needs to be a factual basis for doing so. What your Honor just talked about, about the assault and what he might have done to his wife, that's not in the record anywhere. If the government or the court was so intent on varying upward to the degree that it did, it could have paused the sentencing and said, I want evidence of what happened here. It didn't do that. And again, it goes back to what I said earlier about the considerations of the Colorado court. It's not sentencing him to 18 months probation because, I don't know, let's move this case along. It's considering what was in front of him and decided that this was an appropriate sentence for this particular person. And so what we're saying here is that there has to be something uncommon or unusual or exceptional, and there just wasn't here. I'd like to reserve the remainder of my time. Thank you.  Good morning, Your Honors. Tiffany Walters for the United States. The district court acted within its discretion in sentencing Valdez to 24 months imprisonment for transporting undocumented migrants for financial gain. Defendant relies on Crosby to argue that this is the same error that was committed in Crosby. But Crosby is a very different case. The error in Crosby was fundamentally that the court focused on one of the 3553A factors, the background and history of the defendant, and ignored the others. Crosby listed the 3553A factors but provided no discussion at all on what that meant for sentencing disparities or for general deterrence or a number of other factors. Here, the district court goes through the 3553A factors. And I know the defendant is focusing on sentencing disparities, but the court actually responded to the sentencing disparity that the defendant raised, that the fast-track agreement or the absence of one in this case created a sentencing disparity. The court also acknowledged that to the extent there was a disparity, it was warranted on the facts of this case, namely that he continues to commit crimes. So the court did bring consideration to that and found that the particular facts of this case warranted a different outcome. Unquestionably, the standard is strict for substantive reasonableness. Nobody would question that. Here, it seems that the district court said, yes, he is continuing to commit crimes. That's why he's got three criminal history points. He's got three misdemeanors. We certainly have, as you pointed out in your brief, cases that say that it doesn't render a sentence unreasonable simply because the court considered factors that had already gone into his criminal history calculation. That having been said, we do have evidence, undisputed, that the average for a defendant in this criminal history category was the floor of the sentencing range, the sentencing guideline range, four months. We know, although it goes beyond the record, that within a specific number of years, no defendant within the defendant's criminal history category had received more than five months and this defendant got 24 months. The question, I think, essentially is, it's just a common sense question, is there a reasoned decision, a reasoned decision that could have been made, whether it was or wasn't, because it's substantive, not procedural, that three misdemeanors would justify, that have already been fully captured in his criminal history category without any elucidating facts about what the DUI or DWI considered, would justify basically almost two and a half times the cap of the guideline range when the average was the floor of the guideline range. This is a remarkably harsh sentence and we only have the bare bones without any extenuating explanation in the record. How is that reasonable even under our very differential standard? I think in this case, we can look to the colloquy of the district court between the defendant and also I think that helps inform the district court's focus on his criminal history where he's talking about continuing to commit crimes. We have the explanations on the record that we previously discussed where the district court found those explanations troubling. We also have the district court discussing her feeling that these crimes were dangerous crimes, right? That distinguishes them from just the points that might or might not be reflected in a PSR. The current crime or the past crimes? Both, right? So actually in addressing the need to protect the public from future crimes of the defendant, she points out that his crimes have been dangerous and I think she references specifically the DUIs and the attempted assault. She doesn't reference the false reporting. So I think that is an appreciation of the character of the crimes. None of that is taken into account in criminal history points. Criminal history points are an assessment of within this 10-year period, how many sentences do you have of a certain length? And those are added up. So what the sentencing guidelines do is sort of at wholesale create a baseline of what these convictions, certain number of convictions with a certain number of sentences, but it doesn't address the specific circumstances in this case. Here the district judge is talking to the defendant, talking to him about what happened in these offenses, considering his explanations and determining that the court is concerned that he's continuing to commit crimes, these crimes are dangerous, that this is part of the 3553A factors. And while the defendant is focusing on, you know, certainly there needs to be a sufficiently compelling justification, but the court doesn't have to find that this is an extraordinary case. Gall makes that clear, right? So that alone is not a bar to an upward variance. The court can't presume that only guideline sentences are reasonable. Now the court does have to explain its reason for going upward, but here the court does walk through the 3553A factors and explain why it thinks a guideline sentence isn't sufficient. The last question, and then I'll be quick. Do you agree that the 3553A6 factor, at least that one out of seven factors, cuts in favor of deeming it substantively unreasonable? I would say it certainly suggests that his sentence is longer than most other defendants, but that is, the A6 is unwarranted sentencing disparities. So it may establish a sentencing disparity, but the court considers whether or not it's warranted. And on the facts of this case, the court found that it was. So I think that the court did consider A6 in that context. Do you agree that the offense here was not extraordinary in terms of this offense? In other words, the appellant's arguing that this was just a typical or mine run transporting case. And I understand your argument that that doesn't preclude a variance, but I take it it's relevant. So it's sort of a baseline. Would you agree with the appellant that this is not extraordinary? I think the district court identified one aggravating factor, and that was the speeding. But the court also acknowledged that there were mitigating factors about this offense that he pulled over that he cooperated with the police. So I don't think it is sort of an egregious example of what a transporting offense could be. I think that's correct. Just building on Judge Bachrach's questions raises, I think, something rather basic here, which is how far does discretion go, and at what point does it end? What if the sentence is 48 months on this record? At what point does the multiple over the guideline range really carry the day? And why isn't it this case that carries the day? So I think the court only needs to consider the case in front of it, so it shouldn't reach the question of whether... And why isn't 24 months unreasonable? Well, 24 months is still well below the statutory maximum in this case of 10 years, and the district court here explained, I mean, 24 months... What if the sentence were nine years? Well, I think that would be a different case, and we'd have to look at the facts in that case. Of course it is, but your argument is that it's not 10 years. So what if it were nine years? I don't think we can address whether or not nine years would be appropriate. All right, but so are you still making the argument that the maximum sentence determines whether it's reasonable or not? I don't think that is the determining factor. I think that's one thing that the court can consider, just like it can consider the Sentencing Commission data. I think what the court looks to is whether or not there's a sufficiently compelling justification in the district court's explanation of the 3553A factors, and here the court is concerned about continuing to commit crimes. And again, when we're talking about exponential, yes, this is an exponentially large increase, but it's also a very low sentencing range. And so when we have a sentence of four to 10 months, yes, 24 months is a significant upward variance, but it's 14 months that we're talking about. And so when we get into double or triple or those sort of numbers, I think they have less salience in this context when you have the lower number. It has some salience, and nobody else within a number of years within the criminal history category had gotten any more than five months. Certainly. Again, as Judge Rakarek, you mentioned that that wasn't before the district court, so the court's failure to consider that can't be an error. I just wonder about using that language from Gall, if that's really apt here. But can I ask you a different question? So let's say it was petty larceny in Indian country as the past crime, and the court says, you know, petty larceny is a misdemeanor, and it carries a really low potential sentence. But oftentimes, if you commit petty larceny, there are security guards that can provoke gunfire, and there could be customers in a store. And so, OK, well, even though petty larceny carries a maximum of, say, two months in county lockup, but it is a very serious crime. And, OK, well, maybe it didn't carry any criminal history category points, but that's very serious, and you are continuing to commit crimes. Well, everybody with three criminal history points is continuing to commit crimes. It just so happens that these three crimes are misdemeanors. And with Judge Strickland saying, these are very serious, well, you can say that about any crime. You can say that about petty larceny. I mean, but at some point, it's created out of whole cloth. And under the government's rationale, I think we would pretty much just have to say that no sentence can be so harsh as to be substantively unreasonable, as long as you have some criminal history category, criminal history points, because the judge can always reasonably say, those are extraordinarily serious, far more serious than the maximum penalties would otherwise indicate. What's wrong with that trepidation? Well, I think in this case, we have the court's discussion of dangerousness. So that separates it from just a larceny, which hypothetically in some extreme circumstance could be dangerous. Here we have an attempted assault on his wife that ended up with him going, with his wife going to the hospital to get checked out. And we have driving of the influence, which is, in fact, a dangerous crime. We have a series of these offenses before the arrest for the transporting, and the court being concerned with his explanations. His explanations that, you know, I did these things when I was young. Well, you were 42 at the time of your last conviction. This keeps happening. You're not taking this seriously. I mean, that is sort of a paraphrase. The court didn't actually say the seriousness, but that's the sense you get from the colloquy with the district court. And I think on this record, one can look at it and see that the court is concerned with what's going on here with this specific defendant, and that that goes beyond what the criminal history points capture, and that the court's provided specific and particularized reasons on this record as to why this defendant, even if there is a sentencing disparity, it's warranted in this case. So if we're looking at the national database on the average sentences for this type of offense, how do we tell what the people with three criminal history points did? We have no idea. And it just makes me wonder, how do we grapple with, you know, whether some of those were people who had a 1326 as one, they had a forgery as another. I mean, we don't know what they had, but what's concerning me about this case is we're using general things to dig into the district court's decision that's made on what was happening in front of her. Correct. I think that argument with sentencing disparities has more salience when you have another case where you can actually look at what happened in that case when we're looking at this data. But that's irrelevant under 3553-A-6. Well, I think it talks... For example, a codefendant, you can consider a codefendant's sentence, but that is irrelevant under 3553-A-6 because 3553-A-6 is nationals. That's true. Unwarranted nationals. It does talk about similarly situated defendants. And how do we determine that? Is that purely just determined by the guideline range and nothing more? Or do we get to consider what the defendant did in this particular case? Okay, so you have this national data and we have these general numbers. And then, as you just brought up, well, okay, but is this defendant similarly situated or not? Who has to make that showing at that point? Is that the defendant? Is that the government? If that's the information we need, who needs to bring it forward for the court to consider? I mean, I think the court considers everything before it. But if it isn't before the court... If it isn't before the court... Who needs to alert the court on the similarly situated question? I think either party can do it. I'm not sure that there's a clear burden in this case because... Or in cases in general, because in any given case, any number of the 3553A factors may be at issue. I don't know that there's a particular burden on... Typically, at sentencing, there's going to be a lot of back and forth on the 3553A factors. But if you get to the point where you're going, hmm, four months, five months, that doesn't compare well here. But is there something different about this defendant compared to the average? And who needs to make that showing? Who's going to help the court on that? I think you've tried to answer my question. It's just a... I think both parties have a duty to come forward with information. But let me ask you a different question. Is the government's failure to give Mr. Valdez a fast-track plea agreement relevant at this point? No, that is a matter entirely within the government's discretion. And that wasn't before the district court for the district court to review. The district court was looking at the guideline range as properly calculated and determining whether that was appropriate. And the fast-track was not before the court or this court. If there's no further questions, I'll ask the court to affirm. Thank you. Thank you. So, Judge Matheson, with regards to your question regarding the burden, it's our position that the burden is on the person who's creating the unwarranted disparity. There's nothing exceptional about this case. So it's on the judge? It would be on the judge or the government, if the government wants to back up that unwarranted disparity. There's nothing exceptional here. The way the offense was committed, he was found to be a minor participant, which means he was less culpable than the average participant. Could I just have a few more? Can I make another point? Why don't you finish your thought? You are over time. Okay. So he was already found to be a minor participant, which requires the court to find that he was less culpable than the average participant. The idea that he somehow should be given a higher sentence because there was a minimal speeding involved, there's an enhancement available for the court to go up two levels higher if he endangered other people. But there wasn't that finding made here because he didn't endanger anybody. So that's a feint to say that that somehow justifies this being a dangerous crime. And with regards to the prior, excuse me, I should say this. Crosby talks about justifying a sentence in regards to the guideline sentencing range applicable to the defendant here. Why isn't 10 months enough? I mean, if the court's so concerned about this alleged repeating offenses, why is 10 months not enough? It didn't explain that. And Crosby pointed out that the district court didn't do that there either. And recency is calculated into the guidelines. If you read the Chapter 4 introduction... All right, Counsel, you've gone quite a bit over. Thank you very much. Appreciate your argument. And we will have the case submitted and Counselor excused.